### FRED THOMAS v. STATE.

No. A-6114. Opinion Filed May 12, 1928.
(267 Pac. 278.)

Claude A. Niles, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant. was convicted in the county court of McIntosh county of the crime of manufacturing wine, and was sentenced to 30 days in the county jail and a fine of $100 and cost. To reverse the judgment, defendant has appealed to this court.

It appears from the testimony on behalf of the state that the officers, before going to the residence of defendant, went to a justice of the peace by the name of Duffy for the purpose of obtaining a search warrant. Glenn Price, who was a deputy sheriff, testified to finding about 15 gallons of what he called wine in defendant's residence. R. H. Russell and H. W. Counts testified, in substance, to the same facts as

Glenn Price. There is no dispute as to what the officers found in defendant's residence; at least, there is no question but what it was some kind of grape juice, fermented or unfermented. During the progress of the trial when the state sought to introduce evidence of the searching of defendant's home, the defendant objected to the introduction of the testimony on the ground that it had not been shown that the witness was armed with the proper search warrant when he went to defendant's residence. This objection was overruled by the court and exceptions allowed. A similar objection was interposed to the evidence of each of the witnesses on behalf of the state as the objection that was interposed to the evidence of R. H. Russell's testimony.

On cross-examination, the witness Glenn Price was asked the following questions and gave the following answers:

"Q. You told him, Mr. Price, that you had a search warrant? A. Yes, sir.

"Q. From whom did you obtain that?

"Mr. King: We object to the question as incompetent, irrelevant, and immaterial, for the reason that the state in this case is not relying upon the serach warrant, but upon the consent of the defendant for the officers to make the search. (The objection was overruled by the court and exceptions allowed the plaintiff.)

"A. I obtained it from Leonard Cannon.

"Q. Is Mr. Cannon a judicial officer? A. He is working as a stenographer on the behalf of Mr. Duffy.

"Q. He was the stenographer in Mr. Duffy's office and issued the search warrant and signed Mr. Duffy's name to it? A. Well, Mr. Duffy's name was signed to the search warrant.

"Q. But you are not sure it was signed when it

was issued? A. I did not notice whether it was signed or not.

"Q. Mr. Duffy was not there? A. No, sir.

"Q. The search warrant was filled out there in your presence with Mr. Duffy's name purported to be signed to it? A. Yes, sir.

"Q. Don't you know Mr. Cannon signed Mr. Duffy's name? A. I could not swear to it.

"Q. Mr. Duffy did not sign it? A. Not unless he signed it before it was filled out."

The testimony of the defendant and his wife shows that, when the officers came to his house where he had been working, one of the officers told him he had a search warrant and wanted to search his house; defendant told them all right, to go ahead. On rebuttal, the officers undertook to show that the defendant waived his right under the search warrant and permitted them to search his house, and for that reason it was not necessary to have a valid search warrant. This is the usual testimony in these cases where the officer goes out with a search warrant and searches the home; he goes into court and testifies that the defendant told him all right, to go ahead and search.

The defendant in this case has assigned several errors alleged to have been committed by the trial court, and specially urges his sixth assignment of error:

"That the court erred in admitting testimony of all of state's witnesses, for the reason that said witnesses were officers of the law operating under an illegal search warrant."

Section 7009, C. S. 1921, gives the judges of courts of record and justices of the peace the authority to issue a search warrant.

In this case, the warrant, if issued at all, was not issued by a judge of a court of record or a justice of the peace, but by a stenographer who worked in the office of a justice of the peace, and was issued without authority of law and void, and could not be used as a valid warrant for the purpose of invading the sacred portals of the defendant's home to search it, and any evidence procured by reason of the search warrant was unlawfully procured, and the defendant's objection to the introduction of the same should have been sustained.

This court has had the question of the waiver of defendant's rights before it so many times that it seems useless to take time to cite authorities on that question, but, in order that the courts may clearly understand what this court has held, we cite the following cases: Smith v. State, 34 Okla. Cr. 434, 246 P. 1109; Franklin v. State, 34 Okla. Cr. 269. 246 P. 889; Whitford v. State, 35 Okla. Cr. 187, 249 P. 430.

In the view we take of this record we do not deem it necessary to consider the other errors complained of. There being no competent evidence to sustain the sentence and judgment, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.